[Crim. No. 4598.   Second Dist., Div. Two.   June 1, 1951.]

THE PEOPLE, Respondent, v. WALLACE A. H. WOCH-
NICK, Appellant.

Ellery E. Cuff, Public Defender, and Noel B. Martin, Dep-
uty Public Defender, for Appellant.

Edmund G. Brown, Attorney General, and Dan Kaufmann,
Deputy Attorney General, for Respondent.

McCOMB, J.—From a judgment of guilty of murder of the
second degree after trial before the court without a jury, de-
fendant appeals.   There is also an appeal from the order deny-
ing his motion for a new trial.

This cause has heretofore been before us in the case of
*People* v. *Wochnick*, 98 Cal.App.2d 124 [219 P.2d 70].   The

judgment was reversed because of error of the trial court in the admission of evidence.

The only ground of appeal assigned by defendant is that the judgment and order denying his motion for a new trial "are against the law and the evidence in that the evidence being wholly circumstantial, when considered in the light most favorable to the people [a] disproves the claimed motives and the theories urged by the prosecution; and [b] there is no other tenable hypothesis upon which" the judgment and the order are warranted by the evidence.

This proposition is untenable.

[a] Proof of motive in the commission of the crime of murder is not necessary to sustain a judgment of conviction. (*People* v. *Greig*, 14 Cal.2d 548, 561 [95 P.2d 936].) Hence, assuming the first part of defendant's contention to be correct it would not afford a basis for a reversal of the judgment in this case.

[b] The evidence upon which defendant was convicted is succinctly set forth in the opinion prepared for this court by Mr. Justice Wilson in *People* v. *Wochnick, supra,* thus:

That James Kibrick, the deceased, "received the injuries which caused his death in his liquor store on the corner of Temple and Fremont Streets in the city of Los Angeles. He had been severely beaten and cut, apparently with broken liquor bottles, about his face, head and hands and although those injuries alone would have probably caused his death, the immediate cause was a wound from a knife which had been plunged into his chest, piercing his heart. The knife belonged to the victim and was customarily kept beside the cash register.

"Philip Anast testified he called at the liquor store to make a delivery and saw the victim lying on his back behind the counter in a pool of what seemed to be blood and other liquid; that defendant was straddling the legs of the victim in a more or less squatting position and it appeared to him as if defendant was just releasing the shirt front of the person on the floor. Defendant told the witness the man had been beaten and Anast ran out to call the police. When he returned to the store the victim was sitting in a chair between the counter and the shelves. He arose as they entered and Anast noticed what seemed to be a cigar butt protruding from the victim's shirt. He later identified the object as the taped handle of a knife.

"Defendant testified that when he entered the store he saw no one; he turned to look back whereupon a man brushed by his right side and hit his shoulder and went past him toward the open door; he heard a moan which came from behind the counter; he looked over the counter and saw a man lying in the alleyway between the counter and the shelving and he went around to assist; he straddled and kneeled on one knee over the man and brushed the glass from under his hands and from his neck and endeavored to lift the victim to a sitting position; as he did so he noticed a big gash in the man's neck and decided it was a matter for the police and a doctor; as he stood up he noticed Anast.

"At the time of trial defendant testified he did not see the knife protruding from the vicinity of Kibrick's heart as he bent over him but in a statement previously given to one of the officers he said that when he brushed the glass off Kibrick he felt an instrument."

The evidence in addition disclosed that defendant had two long diagonal cuts upon the palm of his right hand which appeared to have been made by some sharp instrument; there was blood on his fingernails and generally on his hands and clothing, and his clothes were in a disheveled condition; defendant's wallet was found behind the counter in the liquor store and its contents were scattered near it; there was wedged between the welt and upper part of defendant's right shoe material corresponding to that which was found in the garbage room at the back of the liquor store. In addition the decedent described his assailant as a tall, skinny man wearing a dark blue suit and a gray hat. At the time defendant weighed 136 pounds, was dark and slender and when apprehended was wearing a dark blue suit and gray hat.

The foregoing evidence clearly sustains the trial judge's finding that defendant was the perpetrator of the crime, and it would serve no useful purpose to set forth further incriminating facts which are disclosed by the record since the rule by which we are bound is set forth in *People* v. *Newland,* 15 Cal.2d 678, at page 681 [104 P.2d 778], by Mr. Justice Shenk as follows:

"The rule applicable where there is evidence, circumstantial or otherwise, that a crime has been committed and that the defendant was the perpetrator thereof, has been many times reiterated by the reviewing courts of this state as follows: The court on appeal 'will not attempt to determine the weight of the evidence, but will decide only whether upon the face of

the evidence it can be held that sufficient facts could not have been found by the jury to warrant the inference of guilt. For it is the function of the jury in the first instance, and of the trial court after verdict, to determine what facts are established by the evidence, and before the verdict of the jury, which has been approved by the trial court, can be set aside on appeal upon the ground' of insufficiency of the evidence, 'it must be made clearly to appear that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below. The determination of a charge in a criminal case involves proof of two distinct propositions: First, that the offense charged was committed, and second, that it was perpetrated by the person or persons accused thereof. . . . We must assume in favor of the verdict the existence of every fact which the jury could have reasonably deduced from the evidence, and then determine whether such facts are sufficient to support the verdict.' If the circumstances reasonably justify the verdict of the jury, the opinion of the reviewing court that those circumstances might also reasonably be reconciled with the innocence of the defendant will not warrant interference with the determination of the jury.''

*People* v. *Staples,* 149 Cal. 405 [86 P. 886], and *People* v. *Lamson,* 1 Cal.2d 648 [36 P.2d 361], relied on by defendant, are not here applicable for the reason that in *People* v. *Newland* the Supreme Court held that the Lamson case decided nothing except ''that the judgment be reversed'' (see *People* v. *Newland, supra,* 681), and the rule announced in the Staples case was to be strictly confined to situations where the reviewing court as a matter of law must conclude that there is no evidence circumstantial or otherwise to show that a crime had been committed. (*People* v. *Newland, supra,* 681.) Clearly this rule is not applicable for the reason that there was ample evidence as pointed out above to sustain the finding of defendant's guilt.

*People* v. *Solloway,* 98 Cal.App.2d 350 [219 P.2d 801], contains the following statement at page 357:

''The evidence is entirely circumstantial and cannot be held to be both consistent with the idea of guilt and inconsistent with any other rational hypothesis. It does not meet this test with respect to the time element or the identity of the killer, even if it could be deemed sufficient as to the place where the killing occurred. Not being sufficient to establish the essential

facts, beyond a reasonable doubt, it does not sustain the judgment.''

This statement appears to be in conflict with the rule announced by the Supreme Court in *People* v. *Newland, supra,* and therefore must be disregarded by this court. However in *People* v. *Solloway* it was also stated at page 357, ''While some suspicious circumstances appear, a conviction cannot rest upon mere suspicion or conjecture.''

It would thus appear that the decision in *People* v. *Solloway* was predicated upon a sound statement of law that a conviction will not be sustained merely upon suspicious circumstances or conjecture. In the present case it is obvious that the evidence did not consist of merely suspicious circumstances or conjecture but facts which fully sustained the trial court's finding of guilty.

The judgment and order are and each is affirmed.

Moore, P. J., and Wilson, J., concurred.

A petition for a rehearing was denied June 12, 1951, and appellant's petition for a hearing by the Supreme Court was denied June 28, 1951.